IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:06cr140-MHT |
| | ) | |
| WILLIAM TROY ARTHUR | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant William Troy Arthur filed a motion to suppress in this case on July 13, 2006 (Doc. # 14), and the government filed its response on September 8, 2006 (Doc. # 28). The court held an evidentiary hearing on the motion on September 15, 2006. For the reasons that follow, the motion to suppress is due to be denied.

**Facts**[1]

On September 21, 2005, Sergeant Andy Hughes of the Dothan police department stopped a vehicle driven by Henry "Bart" Almand for crossing the center line twice and for a seat belt violation. Defendant Arthur was a passenger in the car. Hughes asked Almand to step out of the vehicle while Hughes obtained his driver's license and registration. Almand produced a valid Florida diver's license, but he could not find the registration or contract for the car, which he said was a rental car. Almand indicated that the car had been rented by a friend of Arthur's; however, neither Arthur nor Almand could remember the

---

[1] The general sequence of events adopted by the court in its statement of facts is that provided by officers Hughes and Malloy in testimony and in their respective reports. In some respects, Arthur's account of the sequence of events on September 21, 2005 differs from that of the officers.

name of the friend, according to Hughes.[2]

Hughes also asked for identification from Arthur, the front seat passenger. Arthur gave Hughes his identification from Florida, including a prison i.d card. Because Arthur "appeared to keep looking back and appeared to be nervous," Hughes asked Almand whether he had any weapons in the vehicle for "officer safety." Almand replied that he had a pistol in the car. Hughes asked Almand whether he had a valid permit for the weapon. When Almond replied that he did not, Hughes placed Almand under arrest and handcuffed him.

At about the same time that Almand was handcuffed, a canine unit – which Hughes had called in previously as back-up – arrived at the scene. Hughes asked the canine officer to conduct a "free air sniff" around the vehicle while he completed a uniform traffic citation. The dog gave a positive indication on the vehicle somewhere on the passenger's side. Hughes asked Arthur to step out of the passenger's side of the car, and patted him down for weapons. Hughes then proceeded to search the car. Under the front passenger's side of the vehicle, Hughes found a stainless steel Hi-Point 9 mm handgun and an off-white "granular powder material" which appeared to be methamphetamine. He also found a gun[3] under the driver's seat.

Hughes testified that, when he located the handgun and methamphetamine under the passenger's seat and placed them on the seat of the vehicle, Arthur said, "That's mine."

---

[2] Arthur testified that he thought his friend's name was Linda, and he believed that her last name was Cooper, but he was not sure.

[3] According to the police report, Defendant's Ex. 1, the gun was a 9mm Ruger handgun.

Hughes believed that Arthur was referring to both the handgun and the methamphetamine, although Arthur disputes that he made any such statement. Hughes handcuffed Arthur and called for a narcotics investigator to respond to the scene.

About fifteen minutes later, narcotics investigator Shawn Malloy arrived. Hughes told Malloy that he had found methamphetamine and two firearms in the vehicle, one firearm under the driver's seat and one under the passenger's seat. Hughes also told Malloy that Arthur was on federal probation and that Arthur had admitted to the methamphetamine and the weapon that were found underneath the passenger's seat.

Malloy testified that he then walked over to Arthur, who was sitting on the ground with his legs crossed and his hands cuffed behind his back, identified himself, and asked if he could ask Arthur some questions. Arthur indicated that he was willing to talk. According to Malloy, he then gave Arthur <u>Miranda</u> warnings orally and asked Arthur if he understood them, and Arthur said that he did. Arthur contends that he received no <u>Miranda</u> warnings at any time during the incident in question.

Malloy testified that he asked Arthur whether he was on federal probation, and Arthur said that he was. Malloy asked whether Arthur knew anything about the methamphetamine found in the vehicle, and Arthur responded, "Yes, sir. That's all mine." Malloy testified that he then asked Arthur about the firearm found beneath the front passenger's seat, and Arthur replied, "Yes sir, that's mine also."

At some point during the search of the car, Hughes found a receipt for the Days Inn. He asked for and received written consent from Arthur to search the room at the Days Inn

in which Almand and Arthur had been staying.

## Discussion

The motion to suppress presents two narrow issues for resolution by the court. First, the court must determine whether or not Hughes may testify at the trial of this matter that, when Hughes located the handgun and methamphetamine under the passenger's seat and placed them on the seat of the vehicle, Arthur said, "That's mine." Second, it must decide whether Malloy may testify at trial: (1) that he asked Arthur whether he knew anything about the methamphetamine found in the vehicle, and that Arthur responded, "Yes, sir. That's all mine," and (2) that he asked Arthur about the firearm found beneath the front passenger's seat, and that Arthur replied, "Yes sir, that's mine also."

<u>Hughes testimony</u>

With regard to Hughes' testimony, neither party contends that <u>Miranda</u> warnings were either given or required prior to Arthur's alleged statement that the methamphetamine and/or the Hi-Point pistol were his. <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984) (Addressing the application of <u>Miranda</u> in the context of traffic stops.). Instead, Arthur's argument concerning this statement is that it simply did not occur. The court declines to invade the province of the jury by resolving this factual dispute. It is clear that Arthur's statement to Hughes – if it did occur – was a spontaneous comment which was not offered in response to any questioning. "Voluntary and spontaneous comments by an accused, even after <u>Miranda</u> rights are asserted, are admissible evidence if the comments were not made in response to government questioning." <u>Cannady v. Dugger</u>, 931 F.2d 752, 754 (11th Cir.1991); <u>see also</u>

United States v. Johnson, 136 Fed.Appx. 279, 283 (11th Cir. 2005). Absent any evidence that Arthur's alleged statement was the product of interrogation, testimony concerning the statement is not due to be suppressed. See United States v. Washington, 431 U.S. 181, 187 (1977) ("Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable. ... Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions."). Accordingly, there is no legal impediment to the admission of Hughes' testimony, if he chooses to offer it, that Arthur made the spontaneous statement alleged by Hughes.[4]

Malloy testimony

The admissibility of Arthur's alleged statements to Malloy that the methamphetamine and the gun belonged to him turns on the question of whether or not Malloy gave Arthur Miranda warnings prior to eliciting the alleged statements. Arthur testified at the suppression hearing that no officer on the scene ever advised him of his rights. Malloy testified, on the contrary, that he did advise Arthur of his rights before questioning him. The parties agree that Malloy's report does not say whether or not Malloy advised Arthur of his rights, although the defendant attaches significance to the omission, and the government does not.

---

[4] Of course, defendant is free to attempt to impeach Hughes with the fact that this statement was not mentioned in Hughes' police report, and the fact that both officer's reports said only that defendant admitted to the methamphetamine. See Defendant's Ex. 1 ("Malloy advised me that Arthur stated that the methamphetamine was his."); Defendant's Ex. 2 ("Mr. Arthur admitted to me that the material [the methamphetamine] belonged to him and not to the driver.").

The parties also agree that, if Malloy did not advise Arthur of his rights, Arthur's alleged statement concerning the drugs and the gun is not admissible.[5] See United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004)("The right to Miranda warnings attaches when custodial interrogation begins.").

    After a careful review of the evidence, the court resolves the question of whether Malloy gave Arthur appropriate Miranda warnings in favor of the government. Malloy has been employed as a law enforcement officer for 7 ½ years. As a narcotics investigator, Malloy is in the position of questioning witnesses, including individuals who are in custody, with some frequency. The court considers it unlikely that Malloy is unfamiliar either with the substance of the Miranda warnings or the necessity for giving them prior to custodial interrogation. Defendant has suggested no reason that Malloy might have omitted the warnings intentionally – for example, in the hope of tricking or coercing the defendant into making an admission. It is possible that Malloy simply forgot to give the warnings, since he did not mention Mirandizing the defendant in his report. However, Malloy testified that he did in fact advise defendant orally of his rights on the occasion in question, and the court finds his testimony credible. Although the failure to record the advisement of rights in a police report may not be good practice, such an omission is not uncommon, and nothing on the record suggests that Malloy was required to note specifically that he had Mirandized the defendant in the police report. See, e.g., United States v. Stroman, 2006 WL 83404, *6, n.

---

    [5] Arthur also disputes that he made any such statement about the gun but, again, as noted below, that factual question is reserved for the jury.

10 (D. Me. 2006) (Crediting similar testimony despite omission of any record in police report that officer had Mirandized the defendant.).

Further, defendant's memory concerning the events of that evening may not be as clear as he suggests. Defendant is a methamphetamine addict (currently undergoing treatment), and he admitted at the hearing that he was "high" at the time that the car was pulled over. His recollection of the sequence of events on September 21, 2005, as noted above, conflicts in material respects with the statements of both police officers. In addition, defendant has a substantial stake, given his previous convictions, in maintaining that he was not offered Miranda warnings in this case. Defendant's personal interest renders his testimony on this issue less credible, in the view of the court.

Accordingly, the court cannot conclude that Malloy's testimony concerning Arthur's alleged statements should be suppressed. As before, the court takes no position on the issue of whether or not Arthur actually made the statements attributed to him, a question of fact reserved to the jury.

## Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motion to suppress (Doc. # 14) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before close of business October 10, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected

to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 27th day of September, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE